SIMMONS *v.* NEWTON *et al.*

No. 9869.   MAY 19, 1934.

*G. Fred Kelley,* for plaintiff. *Sloan & Whelchel,* for defendants.

GILBERT, J. ■ The taxpayer contends that sections 95 and 97 of the city code of ordinances were based upon section 16 of the charter of Gainesville (Ga. Laws 1877, p. 166), and that because the city charter granted by the General Assembly in 1877 makes no provision for notice or hearing on the part of a taxpayer who is not satisfied with the assessment made upon his property for taxation, the said ordinances are unconstitutional and void, and constitute no legal provision for hearing and notice. For that reason he contends that the assessment and collection of the tax, as to him, would be a violation of the due-process clauses of the State and Federal constitutions. He insists that although the ordinances, 95 and 97, in themselves may undertake to provide notice of hearing, the same are impotent and futile; that he is entitled to a mandatory provision for notice, and not merely notice as a matter of grace; and that the ordinances passed without lawful authority merely constitute such notice of hearing as a matter of grace. The taxpayer concedes and sets out in his brief the portion of section 16 of the charter contained in the acts of 1877, as follows: "That the mayor and council of said city shall have power . . to provide for the annual assessment of taxable property therein. . . ' To carry into effect these enumerated powers conferred upon said city,

or its council, by this act, or by any future act of the legislature of the State, the council shall have power to make and pass all needful orders, by-laws, ordinances, resolutions, rules and regulations, not contrary to the constitution and laws of this State," etc.

At the outset it is essential, in the determination of this question, to bear in mind that due process in the matter of levying and assessing taxes is not the same as in ordinary judicial proceedings. *Beckham* v. *Gallemore,* 147 *Ga.* 327 (93 S. E. 884). In Gray on Limitations of Taxing Power, 561, § 1129 et seq., the author says: "It has been shown that there are differences in these regards between proceedings for the levy and collection of taxes and judicial proceedings. As to what constitutes notice and opportunity to be heard, in compliance with this requirement of due process, no general rule can be laid down which will cover all cases." Id. § 1150. "The general rule which may be laid down as applicable to all cases is that the taxpayer must have the notice in time to contest the proceeding before the tax becomes an absolute lien on his property or before it becomes his absolute personal liability." Id. §§ 1141, 1157; *Shippen Lumber Co.* v. *Elliott,* 134 *Ga.* 699, 702 (68 S. E. 509) ; Central of Georgia Ry. Co. *v.* Wright, 207 U. S. 127 (28 Sup. Ct. 47, 52 L. ed. 134). It will be observed that the charter granted by the legislature of 1877 expressly contained the provision, "to provide for the annual assessment of taxable property therein." In the same section after the above recital is the following provision: "To carry into effect these enumerated powers conferred upon said city, or its council, by this act, or by any future act of the legislature of the State, the council shall have power to make and pass all needful orders, by-laws, ordinances, resolutions, rules and regulations, not contrary to the constitution and laws of this State." Under a proper construction of the last-quoted provision, the General Assembly granted the City of Gainesville all needful powers required to adopt ordinances providing for notice and hearing after an assessment of property for taxation. Thus ordinances 95 and 97 do not merely provide for notice and hearing as a matter of grace, but are in themselves mandatory. Under those provisions the taxpayer could not complain that he did not have an opportunity as a matter of right for notice and hearing before the tax became final and conclusive. "The provision that the municipality shall have authority to pass ordinances and laws providing for the

pavement of the streets and sidewalks of the city whenever necessary, and to provide how said paving shall be paid for, whether by the municipality or by the owners of adjacent lands, or by both, by necessary implication confers upon the municipality the authority to make provision for notice to the owner, and for a hearing, after notice, upon the questions of the necessity for the proposed work and the reasonableness of the cost." *City of Sandersville* v. *Bell,* 146 *Ga.* 737 (92 S. E. 218) ; *City of Macon* v. *Anderson,* 155 *Ga.* 607 (117 S. E. 753) ; *Donalson* v. *Bainbridge,* 177 *Ga.* 7 (169 S. E. 886). The latter case distinguishes its facts from the case of *Shippen Lumber Co.* v. *Elliott,* supra. This case is likewise distinguished from the latter case. It follows from this that the taxpayer was not deprived of due process of law under either the State or Federal constitution.

■ The next question is whether the charter of 1877, under which city ordinances 95 and 97 were passed, was repealed by the new charter of the City of Gainesville enacted in 1922 (Ga. Laws 1922, p. 834). The latter act contains the following provisions: "Ordinances now of force in said city shall not be affected by this act, except when any such ordinance shall be in conflict with any of the provisions hereof. . . The present method of returning property for taxation to said city, . . of assessing property for taxation, and of levying and collecting such taxes and other revenues of said city and of holding them shall continue in force, and the offices of tax-assessors and treasurer shall continue in force, . . with the same duties pertaining to said offices as at present."

■ It is also contended that the new charter of the City of Gainesville (Ga. Laws 1922, p. 834) is unconstitutional and void, because it fails to provide for notice and hearing. That act (p. 864, sec. 47) expressly provides that "The present method of returning property for taxation to said city, . . of assessing property for taxation, and of levying and collecting such taxes, . . shall continue in force." Section 30 (p. 852) provides for the payment of an ad valorem tax by the owners of real estate within the city, that the value for such taxation shall be fixed by a board of three tax-assessors at "the fair market value on April 1st each year," and that the lien for such tax shall attach as of April 1st. Section 48 (p. 864) provides: "If the owner or agent of any property shall be dissatisfied with the assessment thereof by the tax-as-

sessors, he shall have the right to ask for an arbitration of the assessment by giving a written notice to the tax-assessors, within five days after March first in any year, of his desire to arbitrate, and naming an arbitrator." Sections 30 and 48 are not available to the present complainant, because the assessment was not made until May 1st, and consequently the time designated within which the dissatisfied property owner could avail himself of the terms of section 48 had passed; but he could have availed himself of the terms of sections 95 and 97.

The taxpayer also contends that the ordinances are in conflict with the act of 1910 (Ga. Laws 1910, pp. 22, 23, 25). This position is untenable, because the act of 1910 expressly limits its application to instances where no adequate provision is made for notice to the taxpayer. And such adequate notice is provided for in the above-stated sections of the city ordinances. *VanDuzer* v. *Irvin*, 138 *Ga.* 524 (75 S. E. 649); *Friedlander* v. *Moultrie*, 155 *Ga.* 184, 190 (116 S. E. 845).

██ These headnotes do not require elaboration.

█ There is no merit in the contention that sections 95 and 97 of the city code are in violation of public policy, because in conflict with art. 1, sec. 1, par. 2, of the State constitution (Civil Code (1910), § 6358), providing that protection to person and property is the paramount duty of government, and shall be impartial and complete. "Public policy is that vague and undefinable concept—the will of the public. The court gathers it from the constitution and the acts of the General Assembly. . . A law will not be declared void as against public policy, unless such appears to be the fact without any reasonable doubt." *Smith* v. *DuBose*, 78 *Ga.* 413 (3 S. E. 309, 6 Am. St. R. 260); *Puckett* v. *Young*, 112 *Ga.* 578 (3), 581 (37 S. E. 880); *Bankers Trust &c. Co.* v. *Farmers &c. Bank*, 163 *Ga.* 352, 354 (136 S. E. 143). The plaintiff does not point out any reason why the ordinances conflict with the constitutional provision quoted. It would involve this court in a "Serbonian Bog" to discuss all imaginable or possible views on the question of public policy here presented. Compare *Landress v. Phœnix Mutual Life Insurance Co.*, decided by the Supreme Court of the United States March 5, 1934.

██ These headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*